IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| COLEEN ETSUKO TOM; and JOYCELYN WANDA UNCIANO, | ) ) ) | CIV. NO. 10-00653 SOM/BMK |
| Plaintiffs, | ) ) | ORDER DISMISSING COMPLAINT |
| vs. | ) ) | |
| GMAC MORTGAGE, LLC, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

ORDER DISMISSING COMPLAINT

I.        INTRODUCTION.

         This case involves an alleged mortgage default that
gave rise to a judicial foreclosure in state court.  While that
judicial foreclosure was pending, a nonjudicial foreclosure
process was started and subsequently terminated.  Plaintiff
Coleen Etsuko Tom sues the current holder of her loan's note and
mortgage, an employee of that company, and the company's
attorney, claiming that the nonjudicial foreclosure was improper.

         Defendants have filed motions to dismiss.  <u>See</u> ECF Nos.
31 and 32.  For the reasons set forth below, the court dismisses
the First Amended Complaint without a hearing pursuant to Local
Rule 7.2(d).

II.     BACKGROUND.

In March 1995, Plaintiff Coleen Etsuko Tom (and her late husband Wayne Noelani Tom)[1] received a loan from Western Pacific Mortgage.  To secure the loan, Tom executed and delivered to Western Pacific Mortgage a $160,000 note and a mortgage on her property.  See First Amended Complaint ("FAC") ¶ 1, Dec. 13, 2010, ECF No. 26; Complaint in Wash. Mut. Bank, FA v. Tom, et al, 03-1-1029-05, May 15 2003, ECF No. 26-3 ("2003 State Court Complaint").  Copies of the note and mortgage are attached to the 2003 State Court Complaint and submitted as part of the First Amended Complaint filed here, ECF No. 26-3.  The mortgage was recorded in the State of Hawaii Office of Assistant Registrar ("Land Court") as Document Number 2226366 and was noted on Transfer Certificate Title ("TCT") 454,267, a canceled TCT that was replaced by TCT 546,739.  See FAC ¶ 1.

The court takes judicial notice of the execution on December 1, 1999, by Wayne Noelani Tom and Coleen Etsuko Tom of a Warranty Deed transferring their interest in the property securing the loan to Joycelyn Wanda Unciano.  See Warranty Deed, ECF No. 31-5 (recorded in the Land Court on Jan. 11, 2000, as Doc. No. 2600790 and noted on TCT 546,739).

---

[1]Footnote 1 of the First Amended Complaint indicates that Wayne Noelani Tom has passed away.

By May 15, 2003, the Toms' note and mortgage had been assigned to Washington Mutual Bank, FA. See 2003 State Court Complaint ¶ 13, ECF No. 26-3. The 2003 State Court Complaint alleges that the Toms failed to pay amounts due and owing under the note and mortgage. Id. ¶ 14. At some point, the Western Pacifica Mortgage loan was transferred from Washington Mutual Bank to Homecomings Financial Network, Inc. See FAC ¶¶ 10-11.

On October 6, 2006, Homecomings Financial Network, Inc., converted from a corporation to a limited liability company named Homecomings Financial, LLC. See Certificate of Conversion to Limited Liability Company, ECF No. 26-4. In September 2008, Homecomings Financial, LLC, petitioned the Land Court for an order allowing documents to be executed and filed in the name of Homecomings Financial, LLC, rather than its previous name of Homecomings Financial Network, Inc. Id. That petition was granted on September 10, 2008. Id.

On December 10, 2008, an order was entered in the state-court case that substituted Homecomings Financial, LLC, as plaintiff. See ECF No. 26-5.

The court takes judicial notice of the denial of Homecomings Financial, LLC's motion for summary judgment on the 2003 State Court Complaint on March 2, 2010. See ECF No. 55-1. Nothing in that order or in the record indicates why the motion was denied.

In August 2010, Homecomings Financial Network, Inc.,
through Kristine Wilson, its vice president, assigned the Toms'
mortgage to GMAC Mortgage, LLC.[2]  This assignment was recorded in
the Land Court as Document Number 3999824 and noted on TCT
546,739.  See ECF No. 26-1.  It is the court's understanding that
GMAC Mortgage, LLC, has not yet substituted itself as Plaintiff
in the state-court case.

On or about September 15, 2010, Wilson, as "Limited
Signing Officer" for GMAC Mortgage, sent Tom a "Notice of
Mortgagee's Intention to Foreclose Under Power of Sale."  See ECF
No. 26-2.  With the issuance of this notice, a state-court
judicial foreclosure proceeding by Homecomings Financial and a
nonjudicial foreclosure proceeding by GMAC Mortgage were
proceeding at the same time based on the same mortgage.
Plaintiffs allege that they received this notice on October 6,
2010.  See FAC ¶ 21.  The court takes judicial notice of the
rescission of the notice of nonjudicial foreclosure on November
8, 2010.  See ECF No. 34-4.

Unciano says that, on October 6, 2010, she spoke with
Defendant David Rosen, Esq., the attorney listed in the
nonjudicial foreclosure notice.  Unciano says that Rosen admitted

---

[2]The court takes judicial notice of a correction in the
assignor.  In March 2011, GMAC Mortgage, joined by Homecomings
Financial, LLC, petitioned the Land Court to correct the assignor
of the Toms' mortgage from Homecomings Financial Network, Inc.,
to Homecomings Financial, LLC.  The Land Court granted that
petition on March 2, 2011.  See ECF No. 58-2.

to her at that time that he was aware of the parallel state-court judicial foreclosure proceeding and that he stated, "I do not see how it affects my clients." See FAC ¶ 18.

On October 25, 2010, Plaintiffs filed the original complaint in this removed action in state court. See FAC ¶ 24. On October 27, 2010, the state-court judge granted an ex parte motion that temporarily restrained the nonjudicial foreclosure. See ECF No. 26-8. That order indicates that the state-court judge was concerned about the simultaneous judicial and nonjudicial foreclosures by "separate competing mortgagees, Homecomings Financial, LLC and GMAC Mortgage, LLC." Id. ¶ 14. The state-court judge was also concerned about Wilson's signing of the assignment of mortgage to GMAC on behalf of Homecomings Financial and later issuing of the notice of nonjudicial foreclosure on behalf of GMAC. Id. ¶ 15. Because the order was issued on an ex parte basis, Defendants did not have an opportunity to address the state-court judge's concerns before the order issued. Possibly, they are related companies.

Plaintiffs' original Complaint in this matter was removed to this court on November 9, 2010. See Notice of Removal of Civil Action, Nov. 9, 2010, ECF No. 1.

On November 17, 2010, the court held a telephone conference with the parties concerning a request by Plaintiffs to extend the ex parte temporary restraining order. Rosen informed

5

the court that the rescission of the notice of nonjudicial

foreclosure was in the process of being filed with the Land

Court.  Plaintiffs then withdrew their request to extend the ex

parte temporary restraining order with the court's agreement that

the request could be reactivated if Defendants took further

action to proceed with the nonjudicial foreclosure.  See FAC

¶ 32; Entering Proceeding, Nov. 17, 2010, ECF No. 12.  The notice

of rescission was actually filed with the Land Court on November

17, 2010.  See FAC ¶ 33; ECF No. 26-11.

    Plaintiffs say that, at a December 6, 2010, scheduling

conference, Rosen told Plaintiffs that he had talked with counsel

in the state-court judicial proceedings before filing the

nonjudicial foreclosure and that they had agreed to the

nonjudicial foreclosure process.  See FAC ¶ 34.

III.    ANALYSIS.

    The FAC asserts claims against 1) GMAC Mortgage, LLC,

the current holder of the note and mortgage, 2) David B. Rosen,

Esq., the attorney listed in GMAC's notice of nonjudicial

foreclosure, and 3) Kristine Wilson, the person who executed the

assignment of mortgage on behalf of Homecomings Financial to GMAC

Mortgage and the person who signed the notice of nonjudicial

foreclosure on behalf of GMAC Mortgage.

    The FAC had also asserted claims against Cal-Western

Reconveyance Corporation, which allegedly assisted in the

nonjudicial foreclosure, Steven Iwamura, Esq., and his law firm, Clay Chapman Iwamura Pulice & Nervell, the firm that represented Homecoming Financial in the state-court judicial foreclosure proceedings until recently.  Those claims have since been dismissed with prejudice.  <u>See</u> Stipulation for Dismissal, May 11, 2011, ECF No. 71

> A.   <u>Count I--Injunctive Relief.</u>

Count I seeks to enjoin GMAC Mortgage, Rosen, and Wilson "from proceeding with their foreclosure under power of sale . . . while this case is pending."  FAC ¶ 37.  The basis of this argument is that Defendants should not be allowed to pursue both a judicial foreclosure and a nonjudicial foreclosure at the same time.

Defendants move to dismiss the injunctive relief claim as moot, as the notice of nonjudicial foreclosure was rescinded before the FAC was filed.  The court agrees that the request to enjoin the nonjudicial foreclosure is moot and therefore dismisses it.

Because mootness pertains to a federal court's subject matter jurisdiction under Article III of the United States Constitution, a motion to dismiss on mootness grounds is analyzed under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  <u>See</u> <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000) (mootness is jurisdictional).  A motion to dismiss for lack of subject matter

jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer subject matter jurisdiction on the court, or may attack the existence of subject matter jurisdiction in fact.  Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact.  Thornhill, 594 F.2d at 733.  Defendants' motion to dismiss Count I is a facial attack on this court's subject matter jurisdiction.

        "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)).  This court may dismiss a claim at any time based on

mootness.  See Hill v. Blind Indus. & Servs. of Maryland, 179
F.3d 754, 757 (9th Cir. 1999).

A party claiming mootness has the heavy burden of
establishing that it is not conveniently stopping the complained-
of activity, only to resume once a suit is dismissed.  See
Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528
U.S. 167, 189 (2000).  Clearly dismissal in that context could
expose a plaintiff to the risk of having to run to court
repeatedly, only to be stymied each time as the defendant
voluntarily, but temporarily, ceases its actions.  See id. (if a
defendant's voluntary cessation of an allegedly unlawful practice
deprived a federal court of jurisdiction over a case, "the courts
would be compelled to leave the defendant free to return to his
old ways").

It is precisely to avoid such a situation that the
Supreme Court has held that "a defendant's voluntary cessation of
a challenged practice does not deprive a court of its power to
determine the legality of that practice."  City of Mesquite v.
Alladin's Castle, Inc., 455 U.S. 283, 289 (1982).  It is true,
however, that "a case might become moot if subsequent events made
it absolutely clear that the allegedly wrongful behavior could
not reasonably be expected to recur."  United States v.
Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)
(quotation omitted).  "[T]he heavy burden of persuading the court
that the challenged conduct cannot reasonably be expected to

start up again lies with the party asserting mootness." <u>Laidlaw</u>, 528 U.S. at 189.

Defendants voluntarily stopped the nonjudicial foreclosure proceedings after the original Complaint was filed but before the FAC was filed.  Although Defendants reserved their right to initiate a nonjudicial foreclosure in the future, nothing in the record indicates that another nonjudicial foreclosure proceeding can reasonably be expected to occur under the circumstances presented here.  Defendants have already abandoned their attempt to use the nonjudicial foreclosure process while the state-court judicial foreclosure proceedings are ongoing.  Under these circumstances, Count I is dismissed as moot.

If Defendants initiate nonjudicial foreclosure proceedings while the state-court foreclosure proceedings are ongoing, Plaintiffs 1) may seek to reopen this case, if necessary, 2) may seek expedited reconsideration of this part of this order, and 3) may seek to enjoin the nonjudicial foreclosure proceedings.  Plaintiffs may alternatively seek injunctive relief based on claims still remaining in the case at that time.  Of course, if the state-court judicial foreclosure proceedings are terminated before another nonjudicial foreclosure is initiated, the court will be faced with a different record.

To the extent Count I seeks attorneys' fees based on sections 480-2 and 480-13 of the Hawaii Revised Statutes because

Plaintiffs convinced a state-court judge to issue an <u>ex parte</u> temporary restraining order, that claim is also dismissed for the reasons set forth below regarding the dismissal of the claims asserted in Count III of the FAC.

           B.    <u>Count II--Declaratory Judgment.</u>

                  1.    <u>Assignment of Mortgage.</u>

Plaintiffs seek a declaratory judgment that the assignment of mortgage from Homecoming Financial to GMAC Mortgage is invalid.  Defendants seek dismissal of that claim for declaratory relief, arguing that the court should abstain under <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 494 (1942). This court agrees and declines to exercise jurisdiction over this claim because the validity of the assignment of mortgage is at the heart of the state-court judicial foreclosure proceeding.

The Declaratory Judgment Act states that "courts <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added).  This court is therefore under no compulsion to exercise its jurisdiction over Declaratory Judgment Act cases.  <u>See</u> <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 494 (1942). Rather, this court has discretion as to whether it will entertain Declaratory Judgment Act cases.  <u>See</u> <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288-89 (1995).

In <u>Brillhart</u>, the Supreme Court stated that it would ordinarily

> be uneconomical as well as vexatious for a
> federal court to proceed in a declaratory
> judgment suit where another suit is pending
> in a state court presenting the same issues,
> not governed by federal law, between the same
> parties.  Gratuitous interference with the
> orderly and comprehensive disposition of a
> state court litigation should be avoided.

Brillhart, 316 U.S. at 495.  Brillhart set forth a nonexhaustive

list of factors district courts should consider in determining

whether to stay or dismiss a federal court Declaratory Judgment

Act case:

> Where a district court is presented with a
> claim such as was made here, it should
> ascertain whether the questions in
> controversy between the parties to the
> federal suit, and which are not foreclosed
> under the applicable substantive law, can
> better be settled in the proceeding pending
> in the state court.  This may entail inquiry
> into the scope of the pending state court
> proceeding and the nature of defenses open
> there.  The federal court may have to
> consider whether the claims of all parties in
> interest can satisfactorily be adjudicated in
> that proceeding, whether necessary parties
> have been joined, whether such parties are
> amenable to process in that proceeding, etc.

Id.

In an en banc decision, the Ninth Circuit has stated

that this court "should avoid needless determination of state law

issues; it should discourage litigants from filing declaratory

actions as a means of forum shopping; and it should avoid

duplicative litigation."  Gov't Employees Ins. Co. v. Dizol, 133

F.3d 1220, 1225 (9th Cir. 1998) (en banc).  The Ninth Circuit

suggested other considerations for a court faced with the issue

of whether to stay or dismiss a Declaratory Judgment Act case in
favor of a pending state-court proceeding: 1) whether the
declaratory action will settle all aspects of the
controversy; 2) whether the declaratory action will serve a
useful purpose in clarifying the legal relations at
issue; 3) whether the declaratory action is being sought merely
for the purposes of procedural fencing or to obtain a res
judicata advantage; 4) whether the use of a declaratory action
will result in entanglement between the federal and state court
systems; 5) the convenience of the parties, and 6) the
availability and relative convenience of other remedies.
Id. n.5.

        When there are parallel state proceedings, "there is a
presumption that the entire suit should be heard in state court."
Id. at 1225.  However, the existence of a state-court action does
not automatically bar a request for federal declaratory relief.
Id.

        In the present case, who owns the loan and who is the
proper plaintiff in the state-court foreclosure proceeding are
matters that the state court will necessarily have to determine
during the course of that action.  Whether GMAC Mortgage or
Homecoming Financial owns the loan is a matter that should be
decided by the state court in the foreclosure proceeding, not via
a declaratory judgment claim in this court.  See Brillhart, 316
U.S. at 495.  Even if this court were to decide whether the

assignment was valid, that would not settle all aspects of the controversy concerning the right to foreclose on the property. Although deciding whether the assignment is valid will serve a useful purpose in clarifying the legal relations at issue, it would also result in unnecessary entanglement between the federal and state court systems and possibly litigation over the res judicata effect of this court's decision. Accordingly, and because the convenience of litigating in state court and in this court is the same, the court declines to exercise jurisdiction over the declaratory judgment claim seeking to have the assignment of the mortgage to GMAC Mortgage declared invalid. See Dizol, 133 F.3d at 1225 n.5.

>    2.    Simultaneous Judicial and Nonjudicial
>           Foreclosure Proceedings.

Plaintiffs next ask the court to declare GMAC Mortgage's notice of intent to conduct a nonjudicial foreclosure proceeding invalid because a judicial foreclosure proceeding was pending in state court at the time GMAC initiated the nonjudicial foreclosure proceeding. The court dismisses this claim on mootness grounds. As discussed above, GMAC has rescinded the notice of nonjudicial foreclosure, making it unnecessary for this court to determine whether a nonjudicial foreclosure may be initiated while a judicial foreclosure is pending.

C.    Count III--Section 480-2 claims.

Section 480-2(a) of the Hawaii Revised Statutes
declares "unfair or deceptive acts or practices in the conduct of
any trade or commerce" to be unlawful.

Paragraph 66(a) of the FAC alleges that Wilson
committed an "unfair or deceptive act or practice" when she, as
vice president Homecomings Financial, executed the assignment of
mortgage to GMAC Mortgage while she was also an employee of GMAC
Mortgage.  This claim is dismissed pursuant to Rule 12(b)(6).

Under Rule 12(b)(6), review is generally limited to the
contents of the complaint.  Sprewell v. Golden State Warriors,
266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100
F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the
pleadings are considered, the Rule 12(b)(6) motion is treated as
one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc.,
110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d
932, 934 (9th Cir. 1996).  However, courts may "consider certain
materials--documents attached to the complaint, documents
incorporated by reference in the complaint, or matters of
judicial notice--without converting the motion to dismiss into a
motion for summary judgment."  United States v. Ritchie, 342 F.3d
903, 908 (9th Cir. 2003).  Documents whose contents are alleged
in a complaint and whose authenticity are not questioned by any
party may also be considered in ruling on a Rule 12(b)(6) motion
to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir.

1994).  On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  <u>Sprewell</u>, 266 F.3d at 988; <u>Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. <u>Sprewell</u>, 266 F.3d at 988.  Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

That Wilson may be vice president of Homecomings Financial as well as an employee of GMAC Mortgage is, without more, insufficient to be an unfair or deceptive act or practice. People often hold positions in multiple companies.  Plaintiffs' FAC therefore fails to meet the minimal pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure.  Plaintiffs were required to allege facts sufficient "to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). While "detailed factual allegations" were not necessary, Plaintiffs were required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Here, Plaintiffs alleged nothing more than a conclusion that Wilson's status in two different companies was unfair and deceptive. Without more factual detail, this claim is lacking.

Plaintiffs also assert that GMAC Mortgage and Rosen violated section 480-2 in connection with the notice of nonjudicial foreclosure. Specifically, Plaintiffs say that section 480-2 was violated when the notice was recorded in the Land Court, published in a newspaper, mailed to Plaintiffs, and posted on the property. Plaintiffs assert that initiating a

nonjudicial foreclosure is unfair when a judicial foreclosure is
pending.  This claim is dismissed because Plaintiffs identify no
legal authority that prohibited the initiation of a nonjudicial
foreclosure when a judicial foreclosure was pending.

Plaintiffs say that the state court's denial of
Homecoming Financial's motion for summary judgment indicates the
impropriety of the nonjudicial foreclosure process.  This court
is not persuaded.  The order denying Homecoming Financial's
motion for summary judgment provides no detail as to why the
motion was denied.  Accordingly, no reasonable inference that the
nonjudicial foreclosure process was improper can be drawn from
the simple denial of the motion.  For all this court knows, the
state court denied the motion because Homecomings Financial is no
longer the owner of the note and mortgage.

That the state-court judge issued an ex parte temporary
restraining order is also insufficient to support a claim of
unfairness for purposes of section 480-2.  Defendants never had
an opportunity to explain what happened or to address the state-
court judge's concerns expressed in the ex parte order.

At best, Plaintiffs cite section 667-37 of the Hawaii
Revised Statutes for support of their section 480-2 claim.
Section 667-37 states that the alternate power of sale
foreclosure process, sections 667-21 to 667-42, does not prohibit
the filing of an action for a judicial foreclosure of the

mortgage property so long as that action is filed before the nonjudicial foreclosure public sale is held.  The section further states, "While that circuit court foreclosure action is pending, the power of sale foreclosure process shall be stayed."  Section 667-37 is simply inapplicable to the current situation involving a nonjudicial foreclosure proceeding initiated after the judicial foreclosure proceeding.  Even if the court were to analogize the current situation to section 667-37, the issuance and publication of a notice of intent to conduct a nonjudicial foreclosure would not violate section 667-37, but instead call for a stay of either the judicial or nonjudicial proceedings.  Defendants' issuance of a notice of intent to proceed with a nonjudicial foreclosure is therefore not violative of section 480-2 under the circumstances presented here.

        D.   <u>Count IV--Section 480D-3.</u>

Plaintiffs next assert that Defendants GMAC Mortgage, Rosen, and Wilson violated section 480D-3(6) and (8) of the Hawaii Revised Statutes.  Those claims are also dismissed pursuant to Rule 12(b)(6).

Section 480D-3(6) prohibits debt collectors from "threaten[ing] to sell or assign the <u>debt</u> with statements that, or implying that, the sale or assignment will cause the debtor to lose a defense or legal right as a result of the sale or assignment."  Haw. Rev. Stat. § 480D-3(6) (emphasis added).

19

Plaintiffs say that Defendants violated section 480D-3(6) when they threatened to sell Plaintiffs' property through the nonjudicial foreclosure sale.  Because selling Plaintiffs' property through a nonjudicial foreclosure sale is not the same as selling Plaintiffs' "debt," Plaintiffs fail to state a viable violation of section 480D-3(6).

Section 480D-3(8) prohibits debt collectors from "disclos[ing], publish[ing], or communicat[ing] any false and material information relating to the indebtedness."  Plaintiffs base their section 480D-3(8) claim on the notice of nonjudicial foreclosure.  However, it is not at all clear how that notice contained "false and material information relating to the indebtedness."  To the extent Plaintiffs are basing this claim on the argument that GMAC Mortgage does not actually own the loan and therefore made a false statement in the notice by saying that it did, the documents attached to the FAC belie that argument. Plaintiffs have attached to the FAC a copy of the assignment of mortgage to GMAC Mortgage.  Although the assigning company was a predecessor of the company that should have assigned the loan to GMAC Mortgage, that fact does not make the assignment ineffective, especially given the documents that the court takes judicial notice of that indicate that the assignment of Tom's mortgage filed in the Land Court has been corrected to indicate that Homecomings Financial, LLC, rather than Homecomings

Financial Network, Inc., assigned the mortgage to GMAC Mortgage.

See ECF 58-2.  Because Plaintiffs fail to allege facts supporting their claim that the notice contained false and material information relating to their indebtedness, their 480D-3(8) claim fails to allege a viable claim and is dismissed.

      E.   Count V--IIED.

Count V asserts a claim for intentional infliction of emotional distress ("IIED") arising out of Defendants' assignment of the mortgage to GMAC Mortgage and the initiation of nonjudicial foreclosure proceedings.

To prove IIED under Hawaii law, Plaintiffs must show: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another." Hac v. Univ. of Haw., 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003). "Outrageous" conduct is that "exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." Id., 102 Haw. at 106, 73 P.3d at 60.  By contrast, "[t]he liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  Restatement (Second) of Torts § 46, cmt. d (1965).  It is for the court to decide, in the first instance, whether the alleged actions may be considered unreasonable or

outrageous.  <u>Young v. Allstate Ins. Co.</u>, 119 Haw. 403, 429, 198
P.3d 666, 692 (2008).

As discussed above, the FAC fails to allege
sufficiently "outrageous" conduct to support an IIED claim.  <u>See</u>
<u>Twombly</u>, 550 U.S. at 555.  Accordingly, the IIED claim is
dismissed.

F.    <u>Counts VI and VII--Misrepresentation.</u>

Plaintiffs assert that GMAC Mortgage and Wilson made a
fraudulent or negligent misrepresentation when the assignment of
mortgage to GMAC Mortgage listed Homecomings Financial Network,
Inc., as the assignor, rather than its successor-in-interest,
Homecomings Financial, LLC.  Plaintiffs then assert that GMAC
Mortgage, Rosen, and Wilson made a fraudulent or negligent
misrepresentation in the notice of intent to initiate the
nonjudicial foreclosure process because ownership of the loan was
not properly transferred to GMAC Mortgage.

One of the elements required to prove a fraudulent or
negligent misrepresentation is that Plaintiffs must show that
they detrimentally relied on false information conveyed by
Defendants.  <u>See</u> <u>Fisher v. Grove Farm Co.</u>, 123 Haw. 82, 103, 230
P.3d 382, 403 (2009) ("In this jurisdiction, the elements of
fraud are: 1) false representations made by the defendant, 2)
with knowledge of their falsity (or without knowledge of their
truth or falsity), 3) in contemplation of plaintiff's reliance

upon them, and 4) plaintiff's detrimental reliance."); Ass'n of
Apartment Owners of Newtown Meadows v. Venture 15, Inc., 115 Haw.
232, 262, 167 P.3d 225, 255 (2007) (noting that reliance is a
necessary element for both intentional and negligent
misrepresentation claims).  Although the FAC alleges reliance and
damages, no factual assertions support those bald allegations.
Accordingly, the court dismisses the misrepresentation claim for
failure to plead sufficient facts to demonstrate a plausible
claim.  See Twombly, 550 U.S. at 555.

        G.   Count VIII-Abuse of Process.

      Plaintiffs assert abuse of process in Count VIII, but
fail to state a claim for abuse of process.  Under Hawaii law, to
constitute an abuse of process, there must be "1) an ulterior
purpose and 2) a wil[l]ful act in the use of the process which is
not proper in the regular conduct of the proceeding."  Young v.
Allstate Ins. Co., 119 Haw. 403, 412, 198 P.3d 666, 675 (2008)
(internal quotation marks omitted); Restatement (Second) of Torts
§ 682 (1977) ("One who uses a legal process, whether criminal or
civil, against another primarily to accomplish a purpose for
which it is not designed, is subject to liability to the other
for harm caused by the abuse of process.").  The Hawaii Supreme
Court has stated that liability is imposed for abuse of process
"when the putative tortfeasor uses legal process 'primarily' for
an ulterior motive."  Chung v. McCabe Hamilton & Renny Co., 109

Haw. 520, 529, 128 P.3d 833, 842 (2006) (emphasis added).  Hawaii

defines legal "process" as "encompass[ing] the entire range of

procedures incident to litigation."  Young, 119 Haw. at 412, 198

P.3d at 675 (internal quotation marks omitted).

        The nonjudicial foreclosure process does not involve

"legal process" because it occurs outside of the "range of

procedures incident to litigation," and instead involves actions

unrelated to court authority.  Plaintiffs therefore do not allege

a viable abuse of process claim arising out of the initiation of

nonjudicial foreclosure proceedings.  See Yanik v. Countrywide

Home Loans, Inc., 2010 WL 4256312, *6 (C.D. Cal. Oct. 18, 2010)

("Plaintiff fails to state a claim for abuse of process because

there is no allegation that any defendant misused a court

proceeding. Although it is not entirely clear from plaintiff's

complaint, the allegation appears to be that defendants initiated

a non-judicial foreclosure."); Smith v. Wachovia, 2009 WL

1948829, *5 (N.D. Cal. July 6, 2009) ("Plaintiff alleges

throughout the complaint that defendants have initiated a

non-judicial foreclosure process against plaintiff.  As defendant

is not alleged to have taken any action pursuant to court

authority, plaintiff has not stated a claim for abuse of

process.").

H.   Count IX--Civil Conspiracy.

Count IX of the FAC asserts a civil conspiracy.  To
prove a civil conspiracy, a claimant must establish "three
elements: (1) the formation of a conspiracy; (2) wrongful conduct
in furtherance of the conspiracy, i.e., an actionable claim based
upon deceit; and (3) damage."  See O'Phelan v. Lee Loy, 2011 WL
719053 (D. Haw. Feb. 18, 2011).  Civil conspiracy does not
constitute an independent claim for relief.  Id.  That is, it
derives from some other wrongful conduct.  Because all of
Plaintiffs' other claims have been dismissed, the court also
dismisses the claim for civil conspiracy.  See Sarmiento v. Bank
of New York Mellon, 2011 WL 884457, *5 (D. Haw. Mar. 10, 2011)
(holding that a cause of action for "civil conspiracy" is a
theory of potential liability that is derivative of other wrongs
and dismissing a civil conspiracy claim as other claims were
dismissed); Gamiao v. Bank of Am., 2011 WL 839757 (D. Haw. Mar.
4, 2011) (same); Rodenhurst v. Bank of Am., 2011 WL 768674 (D.
Haw. Feb. 23, 2011) (same).

IV.   CONCLUSION.

For the foregoing reasons, the court grants the motions
to dismiss the First Amended Complaint.  Because the court
dismisses the First Amended Complaint, there would be no purpose
served in addressing Defendants' requests to strike the
oppositions to their motions for untimeliness.  Those defense

requests are denied.  Plaintiffs are given leave to file a motion seeking leave to file a proposed Second Amended Complaint that is attached to the motion no later than June 24, 2011.  Any such proposed Second Amended Complaint shall not incorporate by reference anything in this case or in the state-court proceeding. In other words, any proposed Second Amended Complaint must stand as a complete document on its own.  If Plaintiffs fail to timely file a motion seeking leave to file a proposed Second Amended Complaint, the Clerk of Court shall automatically enter judgment in favor of Defendants and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 25, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Tom v. GMAC Mortgage, Civil No. 10-00653 SOM/BMK; ORDER DISMISSING COMPLAINT